IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROBERT L. FOSTER,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| vs. | * | Case No. 14-65 |
| | * | |
| **AMERICAN EXPRESS COMPANY,** | * | |
| | * | |
| **Defendant.** | * | |

## COMPLAINT

**COMES NOW** Plaintiff Robert L. Foster, and as his Complaint against the above-described Defendant, assert as follows:

## PRELIMINARY STATEMENT

1. This case arises from the refusal of Defendant to investigate and remove improper credit card charges from Plaintiff's credit card account. Defendant has violated the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666, by failing to properly investigate Plaintiff's dispute, failing to remove those charges and failing to provide the required notification regarding its ultimate disposition of Plaintiff's dispute and Plaintiff's liability for he disputed charge.

## JURISDICTION AND VENUE

2. This action includes claims which arise under the statutes of the United States and this Court's jurisdiction is conferred by 28 U.S.C. § 1331 and 15 U.S.C. §1640(e). Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claim occurred in this District.

## PARTIES

4. Defendant American Express Company ("American Express") is a corporation with its headquarters in Salt Lake City, Utah. At all relevant times, owned and administered the credit card account described below and did so using the name American Express.

## BACKGROUND FACTS

5. Plaintiff Robert Foster is the cardholder of an American Express account identified with the account number ending 9-51005 (the "account").

6. On November 27, 2012 Plaintiff received an unsolicited telemarketing call from someone named Joseph Tavera. Mr. Tavera identified himself as a representative of Wyndham Resorts. Mr. Foster and his wife own a timeshare property managed through the Wyndham Resorts and Mr. Tavera gave Mr. Foster the impression that he was calling on Wyndham's behalf regarding that timeshare property. Mr. Tavera stated that his company had been approached by an interested buyer for the Fosters' timeshare and asked if they were interested in selling. When Mr. Foster told Mr. Tavera that he would consider selling the property, Tavera stated that he would receive a phone call from someone from his company within a few days.

7. Two days later Mr. Foster received a phone call from a Christopher Price who stated that he had received Mr. Foster's name and phone number from Wyndham Resorts. Price stated that he was calling on behalf of Universal Timeshare, which he described as a Wyndham Resorts affiliate. Mr. Price confirmed that there was a buyer interested in purchasing Mr. Foster's timeshare property and that the expected sales price was between $45,000 and $50,000. When Mr. Foster expressed an interest in selling the property at that price, Tavera explained that in order to complete the transaction, Mr. Foster would have to make a payment in the amount of $1,800.00 for various services in connection with the closing of that sale. Believing, based on the representations by

Mr. Price, that he was paying closing costs for a specific sales transaction, Mr. Foster agreed to pay the $1,800.00 and made the payment using his American Express card. This was on or about December

4, 2012.

8. A few hours later, Mr. Foster's wife conducted an internet search on Universal Timeshare and discovered numerous fraud complaints about Universal Timeshare. Mr. Foster and his wife immediately contacted Universal Timeshare and explained that they wished to cancel the transaction. The representative they spoke to promised to get back to them regarding their cancellation, but they never received any response regarding the cancellation. They also heard nothing back from them regarding any sale or closing date.

9. Mrs. Foster also contacted American Express, reported the charge as fraudulent and requested that it be removed.

10. Within seven or eight days after the charge, Mr. Foster received papers from Universal Timeshare which made it clear that there was no closing scheduled and that no specific buyer had been identified to purchase his timeshare. It was clear at that point that Mr. Foster was not going to receive the services which he believed he was paying for based on the representations made by Universal Timeshare - a closing with a specific buyer.

11. The $1,800.00 Universal Timeshare charge first appeared on Mr. Foster's January 2013 statement. That closing date for that statement was January 2, 2013. Immediately after he received this statement, Mr. Foster immediately submitted a dispute of the Universal Timeshare with American Express. Mr. Foster also provided American Express with the details of his dispute, including the fact that they attempted to cancel and that they did not receive the services (a real estate

closing) for which they paid $1,800.00. This was early January 2013.

12. In response to Mr. Foster's dispute, American Express opened a case number (Case No. MY54699) and contacted Mr. Foster stating that it was investigating the dispute. American Express acknowledged the dispute by letter dated January 18th.

13. By letter dated January 29, 2013, American Express informed Mr. Foster that stating that upon investigation the $1,800.00 charge was removed from his account.

14. Mr. Foster heard nothing further American Express during the subsequent two billing cycles (February and March).

15. On April 4, 2013, Mr. Foster was having repairs done on his car and attempted to use American Express credit card to pay the repair bill. The card was declined because his credit limit had been exceeded. When he contacted American Express to find out why his card was inactive, he was told (for the first time) that the $1,800 Universal Timeshare charge had been reinstated.

16. At no point prior to that did Mr. Foster receive any written notification or verbal notification from American Express stating that they had placed the $1,800.00 charge back on his account.

17. On or about April 4th, Mr. Foster received a letter dated April 1, 2013 from American Express notified Mr. Foster that it had concluded its investigation and that the $1,800.00 charge would be reinstated on his account.

18. American Express reinstated the charge sometime between March 25th and March 29th and, in any event, prior to providing notification of the resolution of the dispute or its intent to reinstate the charge.

19. American Express denied the dispute without making any reasonable or proper

4

determination that Mr. Foster had received the services he paid for (real estate sale).

20. After Mr. Foster explained again the circumstances surrounding the $1,800.00 charge and the fact that he had previously disputed that charge, American Express opened another dispute claim, assigning a new number (N144144).

## COUNT I
## (FCBA VIOLATIONS)

21. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

22. At all relevant times, Plaintiff held a credit card account, identified by account number ending in ending 9-51005, which was issued by and administered by Defendant.

23. With respect to said account, Defendant is a "creditor" as that term is defined at 15 U.S.C. 1602(f) and a "card issuer" within the meaning of 12 C.F.R. § 226.2(a)(7).

24. Plaintiff is a "consumer" and, with respect to said credit card account, is a "card holder" within the meaning of 12 C.F.R. § 226.2(a)(8) and (11).

25. Plaintiff's disputes of the above-mentioned unauthorized charges constitute notices of a "billing error" within the meaning of 15 U.S.C. § 1666(b).

26. Plaintiff timely provided notice of a billing error dispute within the meaning of 15 U.S.C. § 1666(a).

27. Defendant failed to comply with the requirements of the FCBA in one or more of the following ways:

    A. Failed to conduct any reasonable investigation of the dispute;

    B. Failed to complete its investigation and provide required notices within time allowed by applicable regulations;

      B.      Failed to comply with appropriate error dispute resolution procedures;

      C.      Failed to remove the disputed charge after receipt of information which demonstrated that Plaintiff had properly rescinded the agreement and/or had not received the benefits bargained for in connection with the charge;

      D.      Failed to make affirmative determination that Plaintiff received the services he paid for (a real estate closing) prior to denying his dispute; and

      D.      Failed to provide the required written notification of its denial of the dispute and its decision to reinstate the disputed charge.

28. As a proximate result of this conduct, Plaintiff has suffered actual damages.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Defendant for violations of the FCBA and award Plaintiff the following relief: actual damages, statutory damages;, costs and attorney's fees. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

### COUNT II
### (REQUEST FOR DECLARATORY RELIEF)

29. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

30. Pursuant to 15 U.S.C. § 1666i, all claims as defenses assertable by Plaintiff against Universal Timeshare are assertable against American Express with respect to amounts included in the credit card balance attributable to the Universal Timeshare charge.

31. Under applicable law, the Universal Timeshare contract was rescinded and the charges placed on Plaintiff's card are wrongful.

32. There is a justiciable dispute between the parties with respect to the amounts owed

under the credit card agreement in connection with the Universal Timeshare charge.

33. WHEREFORE, Plaintiff request an order declaring the following:

A. That the Universal Timeshare contract was effectively rescinded by Plaintiff and the Universal Timeshare charge is due to be refunded;

B. That Plaintiff is not indebted to American Express for any amount associated with the Universal Timeshare charge placed on the credit card account;

C. That Plaintiff is due to be credited all sums incurred in connection with that charge and, to the extent any such sums have been paid, Plaintiff is owed a refund; and

D. Other such relief as the Court deems proper, the premises considered.

**PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL COUNTS.**

KENNETH J. RIEMER
Attorney for Plaintiff
UNDERWOOD & RIEMER, PC
166 Government Street
Mobile, AL 36602
(251) 432-9212
KJR@AlaConsumerLaw.com
(251) 433-7172 (fax)

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

American Express Company
4315 South 2700 West
Salt Lake City, Utah 84184